### ZINN v. AUTO STROP SAFETY RAZOR CO.

(Circuit Court, S. D. New York. April 13, 1909.)

PATENTS (§ 328*)—INFRINGEMENT—SAFETY RAZOR.

The Scheuber patent, No. 679,639, for a safety razor having a movable and spring-adjustable guard, construed, and *held* not infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity.

Clifford E. Dunn and Thomas W. Bakewell, for complainant.
Walter D. Edmonds and T. F. Bourne, for defendant.

PLATT, District Judge. This is an equity suit, based upon an invention of August Wm. Scheuber, shown in letters patent No. 679,639, granted July 30, 1901, to the complainant as Scheuber's assignee. The subject of the invention is the well-known safety razor, and it is for improvements therein. The claims involved are:

"1. A safety razor, comprising a casing or blade support and an automatic or self-adjusting guard, substantially as described.

"2. A safety razor, comprising a casing or blade support and a spring actuated or adjusted guard for the blade, substantially as described.

"3. A safety razor, comprising a blade support and a blade-adjusted movable guard, substantially as described."

"6. A safety razor, comprising a blade support and a guard normally moved inward on the support and adapted for engagement by a blade, substantially as described.

"7. A safety razor, comprising a casing or blade support and an automatic or self-adjusting guard movable relatively to or independently of the casing, substantially as described."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"9. A safety razor casing combined with an automatic or self-setting guard having its opposite portions movable or adjustable independently of one another, substantially as described.

"10. A safety razor casing or blade support and a blade-adjustable guard provided with lugs or stops for securing the proper relative position of the guard to the blade or casing, substantially as described.

"11. A safety razor, comprising a blade support and a blade-adjustable guard provided with oppositely located blade-engaging stops, said guard having its opposite sides independently movable or adjustable, so that each end portion of the blade can set its respective portion of the guard, substantially as described."

After cutting away the refinements of the case, the real defense is understood to be that, in view of the prior art and the specifications of the patent in suit, one is obliged to construe the claims of the patent so narrowly that the defendant's device does not infringe. The alleged infringing safety razor is a cunningly arranged device. Among many operations needed to produce it are the following: The blade, it will be seen, is securely held by a frame which revolves upon a permanently located axis. At one point of its revolution it brings the blade to a place of rest which is nearly in line with the plane of movement of the safety guard, which is spring-actuated and provided with lugs. By pressing the spring the guard is pushed outwardly, and the rigidly held blade is permitted to fall into the plane of movement of the guard, and then, the pressure being released, the spring as it contracts brings the guard back, so that its lugs press against the blade and it remains there exerting a constant steady pressure. The razor is then ready for use.

The operations described offer an opening for the charge of infringement to come in and get a hearing. In this situation, if we confine our thoughts to the claims of the patent in suit, we might think that one element of the alleged infringing device is "an automatic or self-adjusting guard," or "a spring actuated or adjusted guard for the blade," or "a guard * * * adapted for engagement by a blade," etc. It will be noticed, however, that claim 3 calls for "a blade-adjusted movable guard," and that claims 10 and 11 correspond. Complainant's expert says of claim 3:

"I understand this claim to cover * * * a movable guard which is adjusted by the blade. The blade performs the function in the adjustment of the guard."

He also says that it differs little, if any, from claim 1; and of the patented device he says:

"The stops on the guard are in position to be immediately engaged by the blade, which, as the blade slides into place, causes the guard to be moved outwardly or adjusted by the blade."

It will be noticed that in the alleged infringement the blade takes no active part in the adjustment, but, on the contrary, bears simply and purely a passive, inactive relation to the adjustment. It prevents the guard from further spring retraction. It is merely an obstacle to further rearward progress by the guard. Is there so broad a thought as pure self-adjustment of the guard in the general disclosure and claimed monopoly of the patent? To my mind enough appears in the pat-

ent in suit, as explained by the expert, to warrant a negative answer without going further, although to make assurance doubly sure, the entire matter has been examined with more care than the brevity of these comments would indicate.

The problem presented in the art of safety razors was to effect such a combination between the blade of a razor and a safety guard that the unskilled user could by simple mechanical manipulation bring the two into such relation that the resulting device could be used upon the face in such a way as to leave it reasonably free from hair without cutting the skin. Many difficulties were met and overcome, and gain was steady, until we come to Kampfe's patent, No. 637,511; but in all cases, including this, the safety guard was immovable, and the blade, in a variety of ways, was adjusted to the guard.

The Kampfe patent was granted November 21, 1899, and the most casual comparison of the patent in suit therewith shows that Scheuber took the Kampfe construction as the basis for his alleged improvement. The essence of the Kampfe invention seems to be that by the use of a spring which could be used upon different sizes of blades the blades could be brought into proper relationship with the immovable guard. The device protected by that patent met with large success in the market. Scheuber took the Kampfe construction, made the guard movable, and applied a spring adjustment to it, so that, when pushed down against the face of the spring by the contact of the blade with the lugs on the guard, it would, after the blade had been clamped in position by its own spring, bear constantly against the blade. Thus the blade was being pressed by its spring against the guard, and the guard by its spring against the blade.

Kampfe had the old-time blade sprung toward an old-time immovable lugged guard, while Scheuber makes the old-time guard movable, and, after adjusting the blade to it, clamps his blade in the proper position and leaves the blade with the guard constantly pressing against it. This capacity for pushing the guard to the place where it would fit in properly with different sized blades, and then holding constant the proper relationship between the guard and blade by spring tension, is the new thing, if there is any patentably new thing, in Scheuber. To extend this to self-adjustment on the part of the guard, in and of itself, without any connecting thought, would obliterate patentable novelty from the Scheuber device.

Up to the time of Scheuber it had been necessary to adjust the blade to the guard. The spring above the blade had been doing all the work. Now, in Scheuber, the guard being movable and spring actuated, the blade could adjust the guard to itself. I cannot see why the spring that pushed the guard up was not quite as likely to become weakened and inefficient as the spring of Kampfe, which had pushed the blade down; and as, in Scheuber, there are two springs employed, one working up on the guard, and the other down on the blade, the chances for inefficiency would seem to have increased. This may be the reason why the complainant has nothing more than a confessedly paper patent.

What has been said ought to enable one to examine the patent and learn what the invention was, and what it was claimed to be. Scheu-

ber, after having used his blade to adjust his guard and then clamped it into the proper relationship with the guard, leaves his guard snugging up against the blade at the prearranged position. This snugging-up function is the one which we find in defendant's device, and is not the foundation of the operation for which he claims his patent.

All through the specifications we find the blade doing something. It may be true that, after positioning the guard, it is clamped and held as rigidly as possible with the means at hand, and permits the guard to press against it; but no advantage is suggested as accruing therefrom. The gain in the art comes, the inventor says, because he has shown how, by making his guard movable and under spring control, different shapes, sizes, and thicknesses of blades can be taken care of. With an immovable guard the ignorant user must have a blade exactly fitted to the device in advance; but the movable guard would accept and provide for irregularities in blades. If there is any invention to be found, it must, as before suggested, cover so small a field that no trace of defendant's feet can be found upon it.

So far as the invention is disclosed in Figures 1 to 6, the complainant admits that the normally spring-retracted guard was forced forward by the insertion of the blade. But he says that was only one way of doing it, and that Figures 7 and 8 show a construction in which the blade was inserted in the holder and then the spring-actuated guard, f, was allowed to move back under the action of the operating spring until the lugs, r, contacted with the edge thereof, and properly positioned itself with respect thereto. Quoting from page 2, lines 17 to 20, of specifications:

"When the front is closed, or the guard snapped up or swung or moved to the blade, the spring hinge or pressure will hold or adjust the guard to the edge."

He overlooks the fact that what has just been quoted is connected with and supplemental to the statement (line 9 et seq., same page):

"It may be noted that a hinge, h, not only allows automatic adjustment or setting of the guard relatively to the blade, but also allows the opening of the case to give access to the interior for cleaning."

It was after the cleaning that it was put back to duty as suggested by complainant's quotation.

He also overlooks the patentee's earlier statement (page 1, line 91 et seq.) about the function of the spring hinge:

"A spring hinge, h', arranged to normally swing or move the guard inward, but the spring of which yields to allow the blade to move the guard more or less outward, will automatically effect adjustment or proper relative position of the guard and blade."

The more one looks, the more the active use of the blade in bringing about the correspondence between guard and blade is made manifest. In closing, let me restate briefly the two contentions:

Complainant says that the art of safety razors had reached a point, when the patentee came in, where the proper relation of the blade to the guard had been taken care of by advancing a movable blade against an immovable guard, and then sustaining that relation by spring action on the blade. The patentee showed how to take the same old

elements, and, making the blade immovable, to so arrange the old ~~ uard, by making it movable and spring-actuated, that it would bring itself into proper relation with the immovable blade and remain there under spring tension.

Defendant says the patentee made no such disclosure, and made no such claim based thereon, and, if he did, it disclosed no invention; that what he did show was a much narrower and trifling thing, which could not be of any use, and never was used; that his effort produced a purely paper patent, which happens to be so worded in its claims that if one looks there, and nowhere else, an opportunity has arisen for the complainant to use it for an attack upon defendant's profits which have accrued from a totally different device, which in one of its unimportant features may be said to have trespassed upon the imaginary ground which the complainant, by a refinement of reasoning, seems to have become satisfied that she has pre-empted.

Construing the patent as I understand it, the defendant has not infringed. Let the bill be dismissed.